IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RENEE M. SNELL**,<br><br>       Plaintiff,<br><br>v.<br><br>**STATE OF OREGON, DEPARTMENT OF HUMAN SERVICES**,<br><br>       Defendant. | Case No. 3:18-cv-00227-SI<br><br>**OPINION AND ORDER** |

Renee M. Snell, pro se.

Ellen F. Rosenblum, Attorney General, and Jesse B. Davis, Senior Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Renee M. Snell seeks judicial review of state administrative proceedings relating to services that the Oregon Department of Human Service's Vocational Rehabilitation ("DHS" or "VR") provided to Plaintiff. An independent hearing officer and reviewing official concluded that VR did not breach its agreement with Plaintiff by requiring a neurological assessment and VR did not improperly deny job placement services or a referral for job development to Plaintiff by requiring a neurological assessment. After receiving and reviewing the administrative records

pertaining to Plaintiff's case, and considering additional evidence provided by Plaintiff in this action, the Court concludes by a preponderance of the evidence that that the state hearing officer and reviewing official did not err. See 29 U.S.C. § 722(c)(5)(J). Both parties filed motions for summary judgment. Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the]

same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

In cases involving district court review of an administrative order under the Rehabilitation Act, district courts apply a modified *de novo* standard to review the hearing officer's decision, similar to the standard district courts apply to a nearly identical provision of the Individuals with Disabilities Education Act. *Wasser v. N.Y. State Office of Vocational and Educ. Servs. for Individuals with Disabilities*, 602 F.3d 476, 479 (2d Cir. 2010) (comparing nearly identical wording of 29 U.S.C. § 722(c)(5)(J)(ii) and 20 U.S.C. § 1415(i)(2)(C)); *Diamond v. Michigan*, 431 F.3d 262, 265 (2005).

> Thus, although district courts must engage in an independent review of the administrative record and render a decision based on a preponderance of the evidence, the Rehabilitation Act requires substantial deference to [VR] on matters of vocational rehabilitation policy and district courts must give due weight to the findings of the state administrative proceedings.

*Wasser*, 602 F.3d at 480.

## BACKGROUND

### A. Vocational Rehabilitation Procedures

In order to understand the issues at the heart of this case, some background on Oregon's vocational rehabilitation ("VR") services is helpful. VR is the office designated by the State of Oregon to administer comprehensive vocational rehabilitation services for individuals with disabilities under the federal Rehabilitation Act of 1973. An individual who receives or is eligible to receive these services is often referred to as a "VR client." Generally, after determining eligibility, the client and the client's assigned vocational rehabilitation counselor ("VRC"), prepare an "individualized plan for employment" ("IPE"). 34 C.F.R. § 361.45(a). The IPE describes the employment outcomes sought by the client, the rehabilitative services needed to achieve that outcome, the criteria used to evaluate progress, and it also designates the client's third-party service providers, if any, often referred to as job developers. *Id.* § 361.46(a)(1)-(7). "To the extent possible, the employment outcome and the nature and scope of rehabilitation services to be included in the [client's IPE] must be determined based on the data for the assessment of eligibility and priority for services" under federal regulations." *Id.* § 361.45(f)(1). The state may also conduct its own comprehensive assessment of the client's strengths, resources, priorities, concerns, abilities, capabilities, interests and informed choice and those assessments:

> [m]ay include, to the degree needed to make such a determination, an assessment of the personality, interests, interpersonal skills, intelligence and related functional capacities, educational achievements, work experience, vocational aptitudes, personal and social adjustments, and employment opportunities of the individual and the medical, psychiatric, psychological, and other pertinent vocational, educational, cultural, social, recreational, and environmental factors that affect the employment and rehabilitation needs of the individual

*Id.* § 361.5(c)(5)(ii)(C).

An IPE must be reviewed at least annually by the VR and amended if there are substantive changes in the employment outcome, the services to be provided, or the providers of the services. *Id.* § 361.45(d)(5)-(6). The IPE, and any amendments to it, must be agreed to by the client and the VR. *Id.* § 361.45(d)(3), (7).

Under federal and state laws governing VR procedures, *see* 29 U.S.C. § 722(c); OAR 582-020, a VR client may request a hearing to contest any decision by VR that affects the provision of vocational rehabilitation services. This hearing is first held before an Impartial Hearing Officer ("IHO"), who issues a decision that becomes final unless either the client or the VR requests "Formal Administrative Review." In that review, the Reviewing Official performs an administrative review of the IHO decision and issues what becomes the VR's final order. A VR client may seek judicial review of the VR's final order in the Oregon Court of Appeals, *see* ORS 183.482, or may file a civil action for review of the final order pursuant to 29 U.S.C. § 722(c)(5)(J). When, as here, a client files a civil action in a federal district court, the court

> (I) shall receive the records relating to the hearing under subparagraph (A) and the records relating to the State review under subparagraphs (D) through (F), if applicable;
>
> (II) shall hear additional evidence at the request of a party to the action; and
>
> (III) basing the decision of the court on the preponderance of the evidence, shall grant such relief as the court determines to be appropriate.

29 U.S.C.A. § 722(c)(5)(J).

**B. Plaintiff's History with VR**

Plaintiff first sought VR services in 2001. VR determined that Plaintiff was eligible for services and assigned her to work with with VRC Saideh Sharif-Kazemi. Plaintiff and Kazemi signed an IPE and Kazemi engaged an employment firm to work with Plaintiff. The employment

firm assigned job developer Susan Mahoney to work with Plaintiff. AR 775-76. After the relationship between Mahoney and Plaintiff broke down, which Mahoney attributed to Plaintiff's unwillingness to share information with employers about her disability, Plaintiff was assigned a new job developer, Yolanda Howard, in August 2003. AR 777. Howard reported that Plaintiff was providing inconsistent information about the severity of her physical limitations and setting unrealistic earning requirements on prospective jobs. After working with Plaintiff for a month, Howard wrote that she believed Plaintiff "lacked the social skills to successfully find employment." AR 777.

Plaintiff resumed working with Mahoney in September 2003. AR 777. Plaintiff and Mahoney were unable to make progress towards Plaintiff's employment, which Mahoney attributed to Plaintiff's refusal to share information with prospective employers regarding Plaintiff's disabilities and needed accommodations. *Id.* These concerns led to a meeting between Plaintiff, Mahoney, Kazemi, and the local VR branch manager Nancy DiPasquale, in February 2004. AR 778. The meeting was unsuccessful, Plaintiff became angry, and VR determined that a psychological evaluation was necessary to fully assess Plaintiff's employment barriers. AR 779. Plaintiff refused to undergo a psychological evaluation and instead requested a hearing.

A hearing was held during three days in May and June of 2004. AR 774. The hearing officer concluded, in a decision issued August 2, 2004, that VR was factually and legally justified in denying further services until Plaintiff agreed to undergo a psychological evaluation and further medical review. AR 783-88. VR closed Plaintiff's file after the 2004 ruling, and Plaintiff maintained part-time employment from 2004-2012 without the assistance of VR.

Plaintiff applied for VR services again in March 2016. AR 1367. VR found Plaintiff presumptively eligible due to an award of Social Security Disability Income based on a 2004

diagnosis of fibromyalgia and degenerative disc disease. *Id.* VR assigned Nina Frengle to be Plaintiff's VRC. *Id.* Frengle hired an employment consulting firm, Genesis Human Resources, which assigned job developer Matt Field to work with Plaintiff. AR 1368. Plaintiff and Field discussed a Plaintiff's undergoing cognitive assessment, due to Plaintiff's self-described memory issues, but Plaintiff ultimately refused a cognitive assessment because she did not understand that any cognitive assessment would be conducted by an impartial contracted psychologist, not an employee of VR. *Id.* Plaintiff then revoked her consent to release of information to Field, and informed Frengle that she was revoking her release of information to Genesis Human Resources. AR 1369. Frengle continued to work with Plaintiff and they signed an IPE on July 29, 2016. *Id.* Six days later, Plaintiff emailed Frengle concerned that her IPE might affect her Social Security benefits. Frengle responded to Plaintiff's email with contacts for Plaintiff's Social Security questions. The next day, Plaintiff sent eight emails to Frengle. AR 1370. In her sixth email, she withdrew the IPE that had recently been signed. In the seventh email, she requested that Frengle be removed from her case and she be assigned a new VRC. In her eighth email, Plaintiff voided her release of information so that VR could not disclose information to potential employers.

Despite the breakdown in the relationship between Plaintiff and Frengle, on August 25, 2016, Plaintiff met with Frengle, Steven Sanders, her newly assigned VRC, and Christopher Selz, a policy analyst who attended to answer Plaintiff's questions about her social security benefits to revise the IPE that she had recently withdrawn. AR 1371. Sanders left the meeting after the parties had discussed the IPE for 15 minutes without any progress. The remaining parties continued to try and work towards a revised IPE, but Plaintiff eventually became upset and left the meeting. On September 8, 2016, the VR branch manager, now Douglas Franklin, wrote to Plaintiff, informing her that VR had determined that further assessment was needed to

determine what vocational rehabilitation services Plaintiff needed. Plaintiff refused to undergo further assessment and requested a hearing.

A hearing was held on October 24, 2016. AR 1366. The IHO determined that VR had the legal authority to request assessments in order to determine a client's barrier's to employment. AR 1378. The IHO noted that Plaintiff's medical file had not been updated since April 2004, which pre-dated her diagnosis of fibromyalgia. AR 1378. The IHO found in VR's favor on every disputed issue. Plaintiff sought administrative review, and on December 7, 2016, Reviewing Officer Robert Trachtenberg adopted the IHO's findings and conclusions.

Despite the IHO decision, VR continued trying to work with Plaintiff and make progress towards her employment goals without the neuropsychological assessment. On January 25, 2017, Plaintiff met with Branch Manager Doug Franklin and VR Field Services Manager Robert Costello. AR 3. Franklin and Costello agreed not to seek any further medical or mental assessments, but the parties all agreed that in the event that the plan was not working, the parties would consider reassessing the factors and address them as needed. AR 3. At the end of the meeting, VR agreed to assign a new VRC to Plaintiff and Plaintiff and the new VRC would work together to develop an IPE. AR 3. VR assigned Teresa Findley as Plaintiff's new VRC, who referred Plaintiff to Tammie Merina at Community Solutions for Clackamas County for job placement assistance. AR 3-4. Plaintiff was unable to work with Community Solutions and expressed unrealistic expectations for her employment goals. For example, Plaintiff wanted a job that would pay retirement benefits, but only wanted to work seventeen hours a week, and wanted an office job, but did not want to do sedentary work. AR 1476. Plaintiff refused to take a short online quiz assessment of her skills and interests, and Plaintiff wanted "job carving"—a process where a job is modified to fit a Plaintiff's limitations, instead of finding jobs that conform to

Plaintiff's limitations. Community Solutions told VR that it would not be able to work with Plaintiff. AR 4.

Plaintiff and Findley were eventually able to agree on a revised IPE in February 2017. Findley assigned a new job developer to Plaintiff, this time Rob Howell from McCauley, Potter, Fain, and Associates. Plaintiff and Howell's first step was to write a job placement strategy report. In a job placement strategy report, the job developer and the client agree on an employment goal, an amount of work (whether the client can work full-time or part-time), and then determine the strategy and next steps. AR 4. Plaintiff and Howell were unable to agree on a job placement strategy report. Howell provided Plaintiff with a draft report on February 23, 2017 and Plaintiff emailed Howell with concerns about the draft on March 3, 2017. On March 10, Howell emailed Plaintiff a revised report, and on March 12, Plaintiff again refused to sign because she did not believe the report conformed with the IPE. Plaintiff, Howell, Findley, and Franklin met on March 21 to discuss the report. The parties exchanged emails on March 24 with additional proposed changes to the report in response to Plaintiff's comments. Howell prepared a third draft of the report with Plaintiff's requested changes, but Plaintiff again refused to sign. Howell emailed Findley that, after Plaintiff had refused to sign three drafts of the report, his firm would not continue providing services to Plaintiff. AR 4-5.

Franklin and Findley determined that since Plaintiff had resumed VR services in May 2016, she had made little progress towards her employment goals. Howell was the third job developer to withdraw from working with Plaintiff in the past year. Franklin and Findley decided that, to better understand Plaintiff's barriers to employment, VR should again offer Plaintiff a neuropsychological assessment. Franklin was concerned about Plaintiff's cognitive and memory issues and had observed her failure to understand the vocational rehabilitation process, lack of

emotional regulation, and possible mental health issues. AR 4. On April 5, 2017, Plaintiff, Findley, and Franklin met to discuss next steps for Plaintiff. AR 455-68 (transcript of meeting). Plaintiff agreed that she had told her previous VRC Frengle that she had memory problems but denied that she had cognitive issues. Plaintiff refused to participate in a neuropsychological assessment and the meeting broke down, with Plaintiff calling VR "a bunch of baloney" and "garbage" and calling Franklin a "liar" with "psychological problems." AR 465-66. On May 26, 2017, Franklin sent Plaintiff a letter informing her that VR could not continue providing services until she participated in a neuropsychological assessment. In the letter, Franklin asked Plaintiff to contact him by June 7, 2017 if she wished to undergo the assessment, and if she did not do so her case would be closed. After he didn't hear from Plaintiff, on June 8, 2017, Franklin sent Plaintiff a notice of case closure. Plaintiff filed six separate hearing requests. AR 1124.

VR held hearings on July 31, 2017 and August 15, 2017. IHO Lawrence Smith heard Plaintiff's cases and issued a decision on August 30, 2017, ruling in VR's favor on every issue. IHO Smith determined that "VR has established that further assessment of Client's barriers to employment is appropriate and necessary." AR 1135. Plaintiff sought Formal Administrative Review. On September 29, 2017, Reviewing Official Robert Trachtenberg issued an order affirming the IHO decision on most issues, but remanding for consideration of three issues: (1) whether VR improperly denied services under the IPE of failed to permit further amendment to the IPE after February 21, 2017; (2) whether VR properly required a neuropsychological assessment before proceeding with further services because the existing plan was not working; and (3) whether VR properly issued the June 8, 2017 notice of case closure.

The remand hearing was held on November 22, 2017. Plaintiff represented herself and also testified, although she repeatedly had difficulties following the hearing officer's

PAGE 10 – OPINION AND ORDER

instructions. *See, e.g.*, ECF 90 at 38, 47, 52-54, 66-67, 72-74. Findley and Franklin testified as well. In an IHO decision on December 5, 2017, IHO Smith ruled for VR on the three remaining issues. On January 5, 2018 Reviewing Official Trachtenberg issued the Decision and Final Order in VR's favor. AR 1-19. Plaintiff now seeks judicial review of that Final Order.

## DISCUSSION

Although Plaintiff appears to assert many theories of recovery and claims many procedural violations during the vocational rehabilitation process, this Court only has jurisdiction to review a final order affecting the provision of vocational rehabilitation services. Thus, only the January 5, 2018 order is before this Court, but Plaintiff's entire history with VR and the IHO decisions issued in 2004 and 2016 provide relevant context and background. The Court does not, however, review individual meetings and interactions between Plaintiff and VR personnel.

At the outset, the Court notes that Plaintiff has a right, under 29 U.S.C. § 722(c)(5)(J)(ii)(II), to submit additional evidence and the Court shall hear additional evidence at the request of the aggrieved party, here, Plaintiff. Plaintiff has submitted hundreds of pages of documents, many of which are duplicative of the administrative record submitted by Defendant. Defendant moves to strike Plaintiff's filings under the "anti-ferret" doctrine. *See Alsina-Ortiz v. Laboy*, 400 F.3d 77, 80 (1st Cir. 2005) (explaining that rules requiring parties to organize the evidence relieve judges from the burden of having to ferret through the record to find support for the parties' assertions); *Esteem v. City of Pasadena*, 2007 WL 4270360, *4 (C.D. Cal. Sept. 11, 2007); District of Oregon Local Rule of Civil Procedure 56(a). Because Plaintiff has a right to submit additional evidence, the Court denies Defendant's Motion to Strike and reviews the additional evidence submitted by Plaintiff to the extent necessary to understand Plaintiff's arguments.

Based on the administrative record, as well as the additional evidence submitted by Plaintiff, the Court concludes that the Reviewing Official's final order is supported by a preponderance of the evidence. The Reviewing Official agreed with VR that "client had cognition and memory problems with understanding the process, and ensnarls processes with lots of minutia, finding things wrong and making critical judgments, going on and on, and behavior problems lacking emotional regulation." The Reviewing Official reviewed the transcript from Plaintiff's hearing before IHO Smith. IHO Smith observed Plaintiff's difficulties firsthand in the contentious hearings during which Plaintiff repeatedly refused to follow the hearing officer's instructions. *See, e.g.*, ECF 90 at 38, 47, 52-54, 66-67, 72-74. Plaintiff sent more than 200 emails to the IHO from July 2017 until the day of the Remand hearing. AR 8. The Reviewing Official noted that Plaintiff had precipitated five breakdowns in relationships with job developers, VRCs and other individuals in the VR process in less than twelve months. Plaintiff had continuously demonstrated that she was unable to work with others towards her employment goals. Since 2004, Plaintiff has been unable to maintain a working relationship with Saideh Sharif-Kazemi, Susan Mahoney, Yolanda Howard, Nancy DiPasquale, Matt Field, Nina Frengle, Steven Sanders, Christopher Selz, Tammie Merina, Rob Howell, Teresa Findley, and Douglas Franklin. In 2004 and 2016, VR determined that it needed a neuropsychological assessment to determine whether Plaintiff had any mental or cognitive barriers to employment in addition to her documented physical limitations. Plaintiff sent multiple emails to VR personnel, at all hours of the day, written in all-caps, and many of Plaintiff's emails are difficult to follow or understand. See AR 1473-1660. The record demonstrates that Plaintiff's behaviors have been a barrier to maintaining working relationships with VR personnel and provides ample support for the

Reviewing Official's decision that it was reasonable to request that Plaintiff undergo a neurological assessment.

Plaintiff argues that her IPE could not be revised to require a neurological assessment later than 90 days after VR determined that Plaintiff was eligible for VR services. But the eligibility requirements are set out in a separate section from the regulations governing further assessment of a client, and these two regulatory provisions are not interdependent. The State must complete the client's initial IPE within 90 days of the client's eligibility for VR services. 34 C.F.R. § 361.42. The State also must perform an assessment of any prospective VR client as necessary to determine the client's desired employment outcome and the nature and scope of rehabilitation services that the IPE will include. 34 C.F.R. § 361.45(e). This assessment, however, does not need to be completed within 90 days of a client's eligibility because a client's IPE may be updated and revised beyond the first 90 days of a client's eligibility determination. The regulations specifically contemplate a situation where additional information may become necessary to determine the scope of services to be included in an IPE and the IPE may need to be amended. See 34 C.F.R. § 361.45(d)(6). The regulations explain that:

> to the extent possible, the employment outcome and the nature and scope of rehabilitation services to be include in the [IPE] must be determined based on the data used for the assessment of eligibility and priority for services . . . . [But, i]f additional data are necessary to determine the employment outcome and the nature and scope of services to be include in the [IPE], the State unit must conduct a comprehensive assessment of the unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice, including the need for supported employment services, of the eligible individual . . . in accordance with the provisions of § 361.5(c)(5)(ii).

34 C.F.R. § 361.45(f)(2).

This comprehensive assessment—

> (C) May include, to the degree needed to make such a determination, an assessment of the personality, interests, interpersonal skills, intelligence and related functional capacities, educational achievements, work experience, vocational aptitudes, personal and social adjustments, and employment opportunities of the individual and the *medical, psychiatric, psychological*, and other pertinent vocational, educational, cultural, social, recreational, and environmental factors that affect the employment and rehabilitation needs of the individual;
>
> (D) May include, to the degree needed, *an appraisal of the patterns of work behavior* of the individual and services needed for the individual to acquire occupational skills and to develop work attitudes, work habits, work tolerance, and social and behavior patterns necessary for successful job performance, including the use of work in real job situations to assess and develop the capacities of the individual to perform adequately in a work environment; and
>
> (E) To the maximum extent possible, relies on information obtained from experiences in integrated employment settings in the community and in other integrated community settings

34 C.F.R. § 361.5(c)(5)(ii)(C)-(E) (emphasis added).

When Plaintiff met with Findley and Franklin on April 5, 2017, they needed to revise her IPE because her existing IPE was not working. The IPE needed to be revised, at a minimum, to designate a new job developer to work with Plaintiff, after her relationship with Howell broke down. Because Plaintiff had made no progress towards her employment goals as a result of her inability to continue positive working relationships with her job developers, her VRCs, and other VR personnel, Franklin and Findley reasonably believed that a neuropsychological assessment was needed to identify any additional barriers to employment beyond Plaintiff's physical limitations. The federal regulations authorize a State agency to require a comprehensive assessment of a client's "psychiatric, psychological, and other pertinent vocational, educational, cultural, social, recreational, and environmental factors that will affect the employment and rehabilitation needs of the individual." 34 C.F.R. § 361.5(c)(5)(ii)(C).

The Court agrees with the Reviewing Official's finding that VR was both justified and authorized to request that Plaintiff undergo a neuropsychological assessment, and "VR did not improperly deny job placement services or a referral for job development" under the IPE by conditioning Plaintiff's continued receipt of services on her undergoing a neuropsychological assessment. The Reviewing Official concluded that:

> The weight of the evidence supports the position taken by VR in its letter of May 26, 2017 requiring the neuropsychological assessment. It was stuck. The client was adversarial and sent tons of emails. VR and the client had failed to make progress over the past 12 months. . . . The client has had difficulty in working with service providers and VR staff. This difficulty has been a barrier to accessing and benefitting from VR services and achieving her desired employment outcome. The hope was to identify the causes and barriers so they could be addressed.

AR 14. The Court has also reviewed the additional evidence submitted by Plaintiff in this case, as Plaintiff has a right to submit under 29 U.S.C. § 722(c), and finds that the record as a whole supports the Reviewing Official's conclusion that VR was legally and factually justified in requesting that Plaintiff undergo a neuropsychological assessment.[1]

The Reviewing Official's decision is affirmed. There is no genuine dispute of material fact in the record as to the events that transpired in the administrative hearings, or the facts giving rise to the parties' disputes. VR did not breach its agreement with Plaintiff by requiring a neuropsychological assessment, nor did VR improperly deny job placement services or a referral for job development under Plaintiff's IPE by requiring that she undergo a neuropsychological assessment. VR maintains that Plaintiff may at any time take advantage of its services by undergoing a neuropsychological evaluation, and that service remains available to Plaintiff,

---

[1] The Court observes that Plaintiff's repeated references to VR's Summary Judgment briefing as "gibberish," which it is not, provide additional support for the conclusion that Plaintiff might benefit from a neuropsychological assessment.

should she wish to take advantage of it. ECF 89 at 32. The closure of Plaintiff's VR case is affirmed.

## CONCLUSION

Defendant's Motion to Strike (ECF 88) is denied. Defendant's Motion for Summary Judgment (ECF 89) is granted. Plaintiff's Motion for Summary Judgment (ECF 33) is denied. This case is dismissed.

**IT IS SO ORDERED**.

DATED this 31st day of July, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 16 – OPINION AND ORDER